**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Srinivasa Rao Potnuru, et al., | No. CV-23-02423-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Department of Homeland Security, | |
| Defendant. | |

This case arises from the United States Customs and Immigration Services' ("USCIS") administration of the H-1B visa program, of which Plaintiffs were all beneficiaries. USCIS is an agency within the Department of Homeland Security ("DHS"), the Defendant here. Plaintiffs allege that DHS violated the Administrative Procedure Act ("APA") in promulgating and enforcing certain rules as part of the program. Before the Court is DHS's motion to dismiss (Doc. 28) Plaintiffs' Amended Complaint (Doc. 14). The motion is fully briefed[1] (Docs. 25, 29). For the following reasons, the motion is granted in part and denied in part.

I.      **Background**[2]

a.  **The H-1B Visa Process**

The Immigration and Nationality Act ("INA") provides a vehicle for foreign

---

[1] Oral argument is denied because the motions are adequately briefed, and oral argument will not help the Court resolve the issues presented. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

[2] The following facts are drawn from the allegations in the Amended Complaint (Doc. 14), which the Court accepts as true for the purposes of this order. *See supra* Part II.

nationals[3] to obtain nonimmigrant visas to perform specialty occupations in the United States, known as H-1B visas. 8 U.S.C. §§ 1101(a)(15)(H)(i)(b); 1184(c)(1); *see also Greater Mo. Med. Pro-Care Providers, Inc. v. Perez*, 812 F.3d 1132, 1133 n.1 (8th Cir. 2015) (explaining that "[t]he H-1B visa takes its name from 8 U.S.C. § 1101(a)(15)(H)(i)(B)"). Admission to H1-B status is based "upon petition of the importing employer." 8 U.S.C. § 1184(c)(1). Admission is for such time and under such conditions as the Attorney General and the Secretary of Homeland Security may by regulations prescribe. 8 U.S.C. §§ 1184(a)(1).

The INA limits the number of H-1B petitions at a statutory "cap" in any fiscal year of 65,000 and an additional 20,000 for individuals who have earned a master's or higher degree from a United States institution of higher learning. 8 U.S.C. § 1184(g). Because the demand for H-1B status exceeds the statutory cap each year, regulations provide rules for the administration of the H-1B cap selection process, commonly known as the lottery. 8 C.F.R. § 214.2(h)(8)(iii).

The process is divided into two parts. At step one, the petitioner-employer must register to file a petition on behalf of a foreign national on the USCIS website, and the registration must be made in "accordance with 8 CFR 103.2(a)(1), paragraph (h)(8)(iii) of this section [8 C.F.R. § 214.2] and the form instructions." *Id.* § 214.2(h)(8)(iii)(A)(1). As part of the registration, a petitioner-employer must complete an attestation, under penalty of perjury, that the petitioner-employer "has not worked with, or agreed to work with, another registrant, petitioner, agent, or other individual or entity to submit a registration to unfairly increase chances of selection for the beneficiary[.]" *H-1B Electronic Registration Process*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/working-in-the-united-states/temporary-workers/h1b-specialty-occupations/h-1b-electronic-registration-process (Feb. 2, 2025).[4]

---

[3] This order uses the term "foreign national" as equivalent to the statutory term "alien" used in the INA.

[4] Plaintiffs call this attestation the "anti-collusion rule." The Court will hereinafter refer to it as the "attestation requirement."

After the close of the registration period, USCIS performs the computer-generated lottery selection. 8 C.F.R. §§ 214.2(h)(8)(iii)(A)(5)(ii); 214.2(h)(8)(iii)(A)(6)(ii). USCIS then notifies those petitioners whose registrations were selected and sends them an online account with filing instructions. *Id.* § 214.2(h)(8)(iii)(C); *see also id.* § 214.2(h)(8)(iii)(D)(2). Those petitioners must then file a petition in accordance with 8 C.F.R. § 214.2(h)(4)(iii)(B).[5] USCIS notifies the petitioner—not the beneficiary—of the approval, denial, intent to revoke, or revocation of an H-1B petition. *Id.* §§ 214.2(h)(9)(i), (h)(10)(ii), (h)(11). USCIS may issue a notice of intent to revoke ("NOIR") or a notice of intent to deny ("NOID") to a petitioner if it finds the application contains fraud or misrepresents a material fact. *Id.* § 214.2(h)(11)(iii)(B).

When a petition is approved, the petitioner may employ the beneficiary, and the beneficiary receives a "cap number" making them "cap exempt." 8 U.S.C. § 1184(g)(7). A cap-exempt beneficiary is no longer counted against the statutory cap and may accept employment with another employer during the time the visa is valid without repeating the two-step process. *Id.* When a petition is revoked, so too are the visa and cap number—that is, the foreign national loses their H-1B status. *See id.* § 1184(g)(3).

### b. Factual Background

Plaintiffs are all nationals originally from India. (Doc. 14 ¶¶ 1–9.) Some currently reside in the United States; others still live in India. (*Id.*) Various employers filed petitions on behalf of each of the Plaintiffs. (*Id.* ¶¶ 131, 147, 160, 177, 192, 207, 221, 235, 248.) USCIS approved all visa petitions submitted by their employers. (*Id.*) All Plaintiffs received H-1B status and cap numbers. (*Id.* ¶¶ 132, 148, 161, 178, 193, 208, 222, 236, 249.) Plaintiffs were authorized to begin employment in October 2022. (*Id.*) Other employers later submitted transfer petitions on behalf of Plaintiffs Srinivasa Rao Potnuru, Dheeraj Mangu Venkata, Harikrishna Padarti, Krishna Sai Golakoti, Prajwal Kandigemoole Lakshminarayan, and Raghupathy Kommidi. (*Id.* ¶¶ 134, 163–64, 180, 195,

---

[5] "A United States employer seeking to classify an alien as an H-1B [rather than the alien himself] must file a petition on the form prescribed by USCIS in accordance with the form instructions." 8 C.F.R. § 214.2(h)(2)(i)(A).

210, 224.) USCIS determined that all employers who filed petitions on behalf of Plaintiffs engaged in fraud and made false statements of material fact in the H-1B petitions. (*Id.* ¶¶ 138–39, 152–53, 168–69, 184–85, 198–99, 212–13, 227–28, 239–40, 254.) Specifically, USCIS determined that the petitioner-employers falsely attested that they did not collude with other employers to file multiple petitions on behalf of a single foreign national so as to increase that person's chances of being selected in the lottery. (*Id.*) USCIS therefore sent each petitioner-employer a NOIR or NOID, stating its intent to revoke or deny the H-1B petitions. (*Id.* ¶¶ 135, 150, 167, 181, 196, 211, 225, 238, 253.)

Plaintiffs allege three counts, all for violations of the APA. (Doc. 14 at 35, 37, 39.) Count I alleges that DHS created an unlawful legislative rule that cannot be considered the natural outgrowth of the rulemaking process. (*Id.* at 35.) Count II alleges that DHS's construction of INA §§ 1182(a)(6)(C)(i) and 1184(g)(3) contradicts the plain language of those statutes. (*Id.* at 37.) Count III alleges that DHS's revocation of Plaintiffs' cap numbers was procedurally deficient. (*Id.* at 39.) They ask the Court to enjoin DHS from enforcing the rule and corresponding penalty; to declare DHS's authority to revoke a cap number for fraud is limited only to instances where a foreign national made knowingly false statements; to declare DHS's interpretation of the phrase "fraud or willfully misrepresenting a material fact" in 8 U.S.C. §§ 1182(a)(6)(C)(i) and 1184(g)(3) is unlawful; to order DHS to provide notice to Plaintiffs of its intent to revoke their cap numbers and provide them an opportunity to be heard; and to reinstate Plaintiffs cap numbers during the notice and hearing period. (*Id.* at 41.)

## II.    Legal Standards

### a.  Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a case for lack of subject matter jurisdiction. *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010); *see also Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011). "Motions to dismiss under this Rule 'may attack either the allegations of the

complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact.'" *Sabra v. Maricopa Cnty. Comty. Coll. Dist.*, 479 F. Supp. 3d 808, 813 (D. Ariz. 2020) (quoting *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006)).

DHS levies a facial attack to subject matter jurisdiction as to Counts I and III, arguing that Plaintiffs have failed to plausibly allege standing. In resolving a facial attack, the court must accept the allegations in the complaint as true and construe them in a light most favorable to the plaintiff. *Renteria*, 452 F. Supp. 2d at 919. Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts supporting his claim that would entitle him to relief. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). As for Count II, DHS levies a factual attack, arguing Plaintiffs cannot show standing because they lack an injury in fact. In resolving a factual attack, the court does not attach presumptive truthfulness to the allegations in the pleading, and the court may review any evidence outside the pleadings, including affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

### b. Rule 12(b)(6)

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include sufficient facts to demonstrate that the claim is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When analyzing the sufficiency of a complaint, the Court accepts all well-pled factual allegations as true and construes those allegations in a light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Still, the Court is not required "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### III.    Analysis

The Court will first address standing issues, as DHS raises standing challenges to each of the three counts. Then the Court will turn to DHS's 12(b)(6) argument for dismissal

of Count I.

### a.  Plaintiffs plausibly allege standing for all Counts.

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). At the pleadings stage, standing requires a plaintiff plausibly allege the following three elements: "(1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) causation; and (3) a likelihood that a favorable decision will redress the injury." *Id.*; *see also Barnum Timber Co. v. U.S. Env't Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011).

DHS claims that Plaintiffs fail to demonstrate standing for each of their three claims. It claims that Count I is not traceable to it or redressable by a decision in Plaintiffs' favor; that Plaintiffs' fail to allege an injury in fact for Count II; and that Count III fails to satisfy any of the three elements of standing. (Doc. 28 at 10, 14–15.) The Court deals with Counts I and III together, as DHS levies a facial attack on the two that can be resolved together. Then the Court briefly addresses DHS's objection to standing for Count II.

### i.  Counts I and III

In a remarkably similar case to the present one, a district court in the Ninth Circuit held that the plaintiffs had standing to challenge DHS's actions. *Narambatla v. U.S. Dep't of Homeland Sec.*, No. 2:23-cv-01275, 2024 WL 1659025, at *4 (W.D. Wash. Apr. 17, 2024). In *Narambatla*, USCIS revoked each of the plaintiffs' cap numbers on a finding that the petitioner-employers conspired with other companies to submit multiple H-1B registrations on behalf of each of the plaintiff-beneficiaries to increase the odds that those beneficiaries would be selected in the lottery. *Id.* The plaintiffs asserted as their injuries the "lost opportunity" to receive notice and a meaningful opportunity to respond to the NOIRs and the revocation of their H-1B cap numbers. *Id.* They alleged that those injuries were traceable to DHS's actions because "the unnoticed agency action made Plaintiffs

vulnerable to accumulating unlawful status and unauthorized employment. . . . The agency's procedural errors foreclosed any opportunity for Plaintiffs to raise legal issues and for Defendant to articulate its position on the question of law." *Id.* The court further held that these injuries are redressable because courts may compel or set aside agency actions under the APA, allowing the Court to potentially vacate the cap number revocations and order DHS to provide proper notice and an opportunity to be heard. *Id.* at *6.

The court acknowledged that the Ninth Circuit has yet to address the issue of standing in this context but ultimately held that the plaintiffs had met their burden to establish standing at the pleadings stage. *Id.* at *4. It found that the plaintiffs' "loss of H-1B status and lack of notice in the NOIR process are cognizable injuries that are concrete, particularized, and traceable to DHS's revocation of their legal nonimmigrant status." *Id.* at *5. All elements of standing were present.

Like the plaintiffs in *Narambatla*, Plaintiffs here allege two injuries: (1) lack of notice and opportunity to respond to the NOIRs and (2) revocation of the H-1B cap numbers previously assigned to each of them. (*See* Doc. 25 at 13–14.) The Court sees no reason to depart from the reasoning employed by the court in *Narambatla*. Plaintiffs plausibly allege that they lost an opportunity to maintain their H-1B status and work in the United States lawfully when USCIS exceeded its authority by unlawfully revoking their status. Plaintiffs plausibly allege that USCIS exceeded its authority in erroneously enforcing an unlawful legislative rule and failing to provide them notice and an opportunity to respond to the NOIRs and NOIDs. The Court could set aside Plaintiffs' cap number revocations and order DHS to provide notice and an opportunity to be heard, redressing Plaintiffs' injuries. Plaintiffs have plausibly alleged injuries that are fairly traceable to DHS's conduct and likely to be redressed by a decision in their favor sufficient to confer standing for Counts I and III.

### ii.  Count II

Count II alleges that DHS's construction of INA §§ 1182(a)(6)(C)(i) and 1184(g)(3) contradicts the plain language of both. (Doc. 14 at 37.) DHS frames the injury underlying

1    this claim as Plaintiffs' belief that DHS found each of them guilty of fraud individually and

2    thus made them inadmissible. (*Id.* at 14.) DHS submits the declaration of Sharon Orise,

3    USCIS Adjudications Division Chief for the Service Center Operations Directorate, which

4    states that USCIS did not making an adverse finding against any of the Plaintiffs. (Doc.

5    28-1 ¶ 13.) Because no Plaintiff was found inadmissible, DHS asserts that Plaintiffs fail to

6    allege an injury sufficient to confer standing for Count II. (Doc. 28 at 14–15.)

7           The Court disagrees. The Court accepts Orise's declaration and understands that no

8    individual findings of inadmissibility have been made, but the fact remains that Plaintiffs

9    have alleged an injury by way of the revocation of their cap numbers that justifies each of

10   the three counts. Ignoring the allegations relating to the inadmissibility findings, the Court

11   finds that Plaintiffs still sufficiently plead the elements of standing. Plaintiffs plausibly

12   allege that their cap numbers would not have been revoked had DHS properly interpreted

13   the INA. This injury stems from DHS's interpretation of the INA to grant it power to revoke

14   H-1B petitions based on fraud or material misstatement by the employer, rather than the

15   petitioner. Further, that injury would be redressed if the Court determines that DHS's

16   construction of the statute is incorrect.

17          **b.  Count I of the Amended Complaint fails to state a claim upon which**

18          **relief can be granted.**

19          DHS also argues that Count I fails to state a claim under the APA. (*Id.* at 12.) The

20   basis of Count I is Plaintiffs' claim that the attestation requirement is a legislative or

21   substantive rule that DHS created and enforced without following proper

22   notice-and-comment rulemaking procedures. (Doc. 14 at 262–69.) DHS claims that it

23   followed "current governing regulations that allow for the revocation of Plaintiffs' H-1B

24   petitions based on fraud" and that the attestation requirement is merely interpretive. (Doc.

25   28 at 12.)

26                  In general terms, interpretive rules merely explain, but do not
                    add to, the substantive law that already exists in the form of a
27                  statute or legislative rule. . . . Legislative rules, on the other
                    hand, create rights, impose obligations, or effect a change in
28                  existing law pursuant to authority delegated by Congress.

1   *Hemp Indus. Ass'n v. Drug Enf't Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003) (citations
2   omitted). There are three circumstances where a rule has the "force of law" such that it is
3   legislative: "(1) when, in the absence of the rule, there would not be an adequate legislative
4   basis for enforcement action; (2) when the agency has explicitly invoked its general
5   legislative authority; or (3) when the rule effectively amends a prior legislative rule."
6   *Erringer v. Thompson*, 371 F.3d 625, 630 (9th Cir. 2004).

7         The rule cannot be read as legislative. The attestation requirement is contemplated
8   in a final rule published in 2019, which went through the notice-and-comment process.
9   Registration Requirement for Petitioners Seeking to File H-1B Petitions on Behalf of Cap-
10  Subject Aliens, 84 Fed. Reg. 888 (Jan. 31, 2019) (codified at 8 C.F.R. § 214). The rule

> authorizes USCIS to collect sufficient information for each
> registration to mitigate the risk that the registration system will
> be flooded with frivolous registrations. For example, each
> registration will require completion of an attestation, and
> individuals or entities who falsely attest to the bona fides of the
> registration and submitted frivolous registrations may be
> referred to appropriate federal law enforcement agencies for
> investigation and further action as appropriate.

16  84 Fed. Reg. at 900. And the applicable regulations state that "a registration must be
17  properly submitted in accordance with 8 C.F.R. § 103.2(a)(1), paragraph (h)(8)(iii) of this
18  section, and the *form instructions*." 8 C.F.R. § 214.2(h)(8)(iii)(A)(1) (emphasis added).

19        Further, the registration regulation provides that

> [i]f USCIS believes that related entities (such as a parent
> company, subsidiary, or affiliate) may not have a legitimate
> business need to file more than one H-1B petition on behalf of
> the same alien subject to the numerical limitations of section
> 214(g)(1)(A) of the Act or otherwise eligible for an exemption
> under section 214(g)(5)(C) of the Act, USCIS may issue a
> request for additional evidence or notice of intent to deny, or
> notice of intent to revoke each petition. If any of the related
> entities fail to demonstrate a legitimate business need to file an
> H-1B petition on behalf of the same alien, all petitions filed on
> that alien's behalf by the related entities will be denied or
> revoked.

27  8 C.F.R. § 214.2(h)(2)(i)(G). It also states that a "petitioner may only submit one
28  registration per beneficiary in any fiscal year. If a petitioner submits more than one

registration per beneficiary in the same fiscal year, all registrations filed by that petitioner relating to that beneficiary for that fiscal year will be considered invalid[.]" *Id.* § 214.2(h)(8)(iii)(a)(2).

The plain language of the regulation clearly requires that a petitioner cannot work with other petitioners to increase a beneficiary's chances of being selected in the lottery, and the final rule authorizes USCIS to collect information sufficient to ensure no petitioner does so. The attestation requirement is a prophylactic measure that attempts to ensure petitioners do not violate the rules. In the absence of the attestation requirement, DHS would still have authority to revoke the petitions because the regulations allow for revocation when related entities fail to demonstrate a legitimate business need for multiple H-1B petitions on behalf of one beneficiary. Plaintiffs do not allege that DHS has invoked general legislative authority to justify the rule nor that the rule effectively amends a prior rule. In fact, the rule is in line with the regulation prohibiting collusion. Plaintiffs fail to state a claim on Count I. The Court therefore dismisses it.

**IV.    Conclusion**

Plaintiffs plead allegations sufficient to confer standing on all counts, but because Count I fails to state a claim upon which relief can be granted, the Court dismisses it. Plaintiffs may proceed on Counts II and III.

**IT IS ORDERED** that DHS's motion to dismiss (Doc. 28) is **GRANTED** in part and **DENIED** in part.

Dated this 4th day of March, 2025.

Douglas L. Rayes
Senior United States District Judge