**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Srinivasa Rao Potnuru, et al., | No. CV-23-02423-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Department of Homeland Security, | |
| Defendant. | |

This case arises from the United States Customs and Immigration Services' ("USCIS") administration of the H-1B visa program, of which Plaintiffs were all beneficiaries. USCIS is an agency within the Department of Homeland Security ("DHS"), the Defendant here. Plaintiffs allege that DHS violated the Administrative Procedure Act ("APA") in enforcing certain rules as part of the program. Before the Court are the parties' cross-motions for summary judgment. (Docs. 39, 43.) The motions are fully briefed. (Doc. 46.) The Court heard oral argument on December 19, 2025. (Doc. 53.) For the following reasons, Plaintiffs' motion is granted in part and denied in part, and DHS's motion is granted in part and denied in part.

**I.   Background**

    **A.   The H-1B Visa Process**

Admission to H-1B status is based "upon petition of the importing employer." 8 U.S.C. § 1184(c)(1). The process is divided into two parts. At step one, the petitioner-

employer must register to file a petition on behalf of a foreign national[1] on the USCIS website, and the registration must be made in "accordance with 8 CFR 103.2(a)(1), paragraph (h)(8)(iii) of this section and the form instructions." 8 C.F.R. § 214.2(h)(8)(iii)(A)(1). As part of the registration, a petitioner-employer must complete an attestation, under penalty of perjury, that the petitioner-employer "has not worked with, or agreed to work with, another registrant, petitioner, agent, or other individual or entity to submit a registration to unfairly increase chances of selection for the beneficiary." *H-1B Electronic Registration Process*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-1b-specialty-occupations/h-1b-electronic-registration-process (Oct. 22, 2025). After the close of the registration period, USCIS performs a computer-generated lottery selection. §§ 214.2(h)(8)(iii)(A)(5)(ii); 214.2(h)(8)(iii)(A)(6)(ii). USCIS then notifies those employers whose registrations were selected. § 214.2(h)(8)(iii)(C). At step two, those employers must then file a petition in accordance with § 214.2(h)(4)(iii)(B).

An employer may not file more than one H-1B petition on behalf of the same foreign national. § 214.2(h)(2)(i)(G). Doing so would "result in the denial or revocation of all such petitions." *Id.* That rule does not preclude related employers from filing petitions on behalf of the same foreign national. 73 Fed. Reg. 15392(III)(B). "USCIS recognizes that an employer and one or more related entities (such as a parent, subsidiary or affiliate) may extend the same [foreign national] two or more job offers for distinct positions and therefore have a legitimate business need to file two or more separate H-1B petitions on behalf of the same [foreign national]." *Id.* But if USCIS believes that the related employers may not have a legitimate business need to file more than one H-1B petition for the same foreign national, USCIS may issue a request for additional evidence, notice of intent to deny ("NOID"), or notice of intent to revoke ("NOIR") each petition. § 214.2(h)(2)(i)(G). If in response, any of the related entities fail to demonstrate a legitimate business need, all petitions filed on that foreign national's behalf by the related entities will be denied or

---

[1] This order uses the term "foreign national" as equivalent to the statutory term "alien" used in the INA.

revoked. *Id.*

USCIS notifies the petitioner-employer—not the foreign national —of the approval, denial, intent to deny, intent to revoke, or revocation of an H-1B petition. §§ 214.2(h)(9)(i), (h)(10)(ii), (h)(11). USCIS may issue a NOID or a NOIR to a petitioner-employer if it finds the application contains fraud or misrepresents a material fact. § 214.2(h)(11)(iii)(B). Then "[i]f a[] [foreign national] who was issued a visa or otherwise provided nonimmigrant status . . . is found to have been issued such visa or otherwise provided such status by fraud or willfully misrepresenting a material fact" and that visa or nonimmigrant status is revoked, then one H-1B cap number is restored. § 1184(g)(3).

**B.    Factual Background**

Plaintiffs are all nationals originally from India. (Doc. 14 ¶¶ 1–9.) Some currently reside in the United States; others still live in India. (*Id.*) Various employers registered and then filed petitions on behalf of each of the Plaintiffs. (*Id.* ¶¶ 131, 147, 160, 177, 192, 207, 221, 235, 248.) USCIS approved all petitions submitted by Plaintiffs' employers and all Plaintiffs received H-1B status and cap numbers. (*Id.* ¶¶ 132, 148, 161, 178, 193, 208, 222, 236, 249.) Plaintiffs were authorized to begin employment in October 2022. (*Id.*) Other employers later submitted transfer petitions on behalf of Plaintiffs Srinivasa Rao Potnuru, Dheeraj Mangu Venkata, Harikrishna Padarti, Krishna Sai Golakoti, Prajwal Kandigemoole Lakshminarayan, and Raghupathy Kommidi. (*Id.* ¶¶ 134, 163–64, 180, 195, 210, 224.)

USCIS later determined that all employers who filed petitions on behalf of Plaintiffs had engaged in fraud and made false statements of material fact in the H-1B petitions by colluding with other companies to increase Plaintiffs' odds of selection during the registration step. (*Id.* ¶¶ 138–39, 152–53, 168–69, 184–85, 198–99, 212–13, 227–28, 239–40, 254.) USCIS therefore sent each petitioner-employer a NOIR, stating its intent to revoke the H-1B petitions. (*Id.* ¶¶ 137, 150, 167, 182, 196, 211, 225, 238, 253.) USCIS then revoked the H-1B petitions (*Id.* ¶¶ 141, 155, 171, 187, 201, 215, 230, 242, 255) and Plaintiffs' H-1B status and cap numbers (*Id.* ¶¶ 144, 158, 174, 190, 204, 218, 233, 245,

259).

Plaintiffs filed the present suit and alleged three counts, all for violations of the APA. (Doc. 14 at 35, 37, 39.) DHS moved to dismiss, (Doc. 28) which the Court granted in part as to Count I (Doc. 31 at 10). The remaining counts allege that DHS's construction of § 1184(g)(3) contradicts the plain language of the statute and that DHS's revocation of Plaintiffs' cap numbers was procedurally deficient. (Doc. 14 at 37, 39.) Both parties now move for summary judgment.

## II.   Legal Standard

Generally, a court may grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, when a court is asked to review an administrative agency's action, "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). In such cases, the agency, not the court, is the fact finder and the court's role is merely to "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* Thus "summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Id.* at 770.

Under the APA, a court shall set aside reviewable agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The party challenging an agency's action bears the burden of demonstrating that the agency acted in violation of the APA. *Forest Guardians v. U.S. Forest Serv.*, 370 F. Supp. 2d 978, 984 (D. Ariz. 2004). An agency's construction of a statute is reviewed de novo. *Grand Canyon Univ. v. Cardona*, 121 F.4th 717, 723 (9th Cir. 2024) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394–95 (2024)). A court "must exercise independent judgment" when interpreting a statute, but the court may "seek aid from the interpretations of those responsible for implementing particular statutes." *Loper Bright*, 603 U.S. at 394. An agency's "legal error requires that its decisions be set aside." *Grand Canyon Univ.*, 121 F.4th at 726.

But if an agency "construed the law correctly," then a court reviews the agency's "application of the law to the facts of the case under the APA's deferential standards." *Id.* at 723. Under this deferential arbitrary-and-capricious standard, the agency action need only be "reasonable and reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). The court "simply ensures that the agency. . . has reasonably considered the relevant issues and reasonably explained the decision." *Id.* The court reviews the agency's factual findings for substantial evidence and "must uphold such findings if 'a reasonable mind might accept this particular evidentiary record as adequate to support the agency's conclusion.'" *Grand Canyon Univ.*, 121 F.4th at 723 (brackets omitted) (quoting *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999)).

### III. Analysis

As a preliminary matter, DHS argues that Venkata and Golakoti's claims should be dismissed as moot because "these Plaintiffs have received new H-1B cap numbers and approved H-1B cap-subject petitions." (Doc. 43 at 14.) Plaintiffs conceded this point at oral argument. Accordingly, DHS is entitled to summary judgment on the claims brought by Venkata and Golakoti.

#### A. DHS properly interpreted Section 1184(g)(3).

Plaintiffs argue that DHS erroneously interpreted the relevant statutes and thus acted beyond its statutory authority because "§ 1184(g)(3) authorizes revocation only when the [foreign national] has made the knowingly false communication." (Doc. 39 at 12.) DHS responds that § 1184(g)(3) contains no such limitation. (Doc. 43 at 15.) As noted, the Court reviews an agency's construction of a statute de novo. *Grand Canyon Univ.*, 121 F.4th at 723.

In a case similar to the present one, another district court in the Ninth Circuit rejected the interpretation of § 1184(g)(3) that Plaintiffs propose here. *Narambatla v. U.S. Dep't of Homeland Sec.*, 770 F. Supp. 3d 1264, 1268–69 (W.D. Wash. Mar. 10, 2025). So have other courts faced with the same statutory argument. *Parcha v. Cuccinelli*, No. 4:20-CV-015-SDJ, 2020 WL 607103, at *9–10 (E.D. Tex. Feb. 7, 2020); *Manney v. U.S. Dep't of*

- 5 -

*Homeland Sec.*, 735 F. Supp. 3d 590, 600 (E.D. Pa. 2024); *Y&N Bldg. Supply US LLC v. U.S. Dep't of Homeland Sec.*, No. 24-03593 (RC), 2025 WL 2801940, at *11 (D.D.C. Oct 1, 2025). The Court is not persuaded to depart from this trend.

"The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (internal quotation marks and citation omitted). "Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id.*; *see also United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1128 (9th Cir. 2015).

Section 1184(g)(3) provides:

> If a[] [foreign national] who was issued a visa or otherwise provided nonimmigrant status and counted against the numerical limitations of paragraph (1) is found to have been issued such visa or otherwise provided such status by fraud or willfully misrepresenting a material fact and such visa or nonimmigrant status is revoked, then one number shall be restored to the total number of [foreign nationals] who may be issued visas or otherwise provided such status[.]

A plain reading of § 1184(g)(3) does not require the foreign national to engage in the fraud or willful misrepresentation of a fact. Indeed, the statute does not indicate any specific actor who must commit the fraud or willful misrepresentation. USCIS's revocation, then, could be based on the fraudulent acts or misrepresentations of either the petitioner-employer or the foreign national. *See Parcha*, 2020 WL 607103, at *9 (stating that the "plain language" of Section 1184(g)(3) "provides for revocation of a visa whenever it 'is found to have been issued' on the basis of fraud or willful misrepresentation without regard for which party committed the wrongful acts"); *Manney*, 735 F. Supp. 3d at 600 (reasoning that the plaintiffs' interpretation of Section 1184(g)(3) would require the court to "read a word into the statute: nowhere does it specify that a cap number can *only* be revoked through an individual's own fraud or misrepresentation") (emphasis in original); *Narambatla*, 770 F.Supp.3d at 1269 ("The statute does not say that a cap number can only be revoked because of the noncitizen's fraud or misrepresentation."); *Y&N Building Supply US LLC*,

2025 WL 2801940, at *11 ("Nothing in the statute expressly limits cap number revocation to misconduct by a particular party.").

To bolster their reading of § 1184(g)(3), Plaintiffs assert that the statute incorporates 8 U.S.C. § 1182(a)(6)(C)(i). This argument is unavailing. Section 1182(a)(6)(C)(i) states that any noncitizen "who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." First, no part of § 1184(g)(3) explicitly or implicitly references § 1182(a)(6)(C)(i). When Congress has intended to incorporate §1182(a)(6)(C)(i) into other immigration statutes, it did so explicitly. *See, e.g.*, 8 U.S.C. § 1227(a)(1)(G) ("A[] [foreign national] shall be considered to be deportable as having procured a visa or other documentation by fraud (within the meaning of section 1182(a)(6)(C)(i) of this title)"); 8 U.S.C. § 1160(a)(3)(B)(i) (same). That both provisions use the phrase "fraud or willfully misrepresenting a material fact" is insufficient to conclude that one is meant to incorporate the other.

Second, the two provisions have starkly different consequences. Under § 1184(g)(3), after a finding of fraud or willful misrepresentation the foreign national's cap number and visa or status are revoked. On the other hand, under § 1182(a)(6)(C)(i), after such a finding the foreign national is deemed inadmissible. "That substantial difference in outcome undermines Plaintiffs' position because it shows that Congress recognized a distinction between situations where an employee is culpable and where the employee is blameless." *Manney*, 735 F. Supp. 3d at 600. DHS submits the declaration of Sharon Orise, USCIS Adjudications Division Chief for the Service Center Operations Directorate, which states that USCIS did not find any Plaintiff inadmissible. (Doc. 43-1 at 15.) Further, Plaintiffs Golakoti and Venkata have received new approved H-1B petitions and cap numbers, which they could not do if they had been deemed inadmissible. (*Id.* at 5, 7–8.)

Section 1184(g)(3) does not limit USCIS to revoking a petition only on a finding of fraud or willful misrepresentation by the foreign national rather than by the foreign

- 7 -

national's employer. And when a petition is revoked, § 1184(g)(3) dictates that the foreign national's H-1B status and cap number are also revoked.

### B. USCIS failed to consider or explain its consideration of a relevant issue for several Plaintiffs.

Plaintiffs argue that USCIS's revocations were arbitrary and capricious because USCIS failed to account for § 214.2(h)(2)(i)(G), which allows for related entities to file multiple petitions for the same beneficiary provided there is a legitimate business need. (Doc. 39 at 9–11.) They assert that USCIS "completely failed to consider the existence of a legitimate business need." (*Id.* at 11.) The Court agrees regarding several Plaintiffs.

Plaintiffs' employers attested that they "ha[d] not worked with, or agreed to work with, another registrant, petitioner, agent, or other individual or entity to submit a registration to unfairly increase chances of selection for the beneficiary[.]" *H-1B Electronic Registration Process*, U.S. Citizenship & Immigr. Servs. But Plaintiffs' employers and a related entity could file petitions on behalf of the same foreign national, 73 Fed. Reg. 15392, if the related employers have "a legitimate business need" to do so. § 214.2(h)(2)(i)(G). USCIS's allegation that Plaintiffs' employers worked with a related entity "to unfairly increase chances of selection for the beneficiary" in violation of the registration attestation formed the basis of each NOIR and revocation.

The Court must "ensure[] that the agency. . . has reasonably considered the relevant issues and reasonably explained the decision." *Prometheus Radio Project*, 592 U.S. at 423. Here, USCIS did not consider or, if it did, failed to explain its consideration of, whether the related entities that submitted registrations on behalf of Plaintiffs had a legitimate business need to do so. The existence of a legitimate business need is relevant to whether a petitioner-employer submitted a registration to unfairly increase chances of selection. *See Manney*, 735 F. Supp. 3d at 599 ("If unrelated entities happen to register for the same foreign national, each with legitimate job offers, then they have not coordinated or colluded to 'unfairly' increase their chances of selection."); *see also Y&N Building Supply US LLC*, 2025 WL 2801940, at *10 (noting that registration by related entities for the same foreign

national does unfairly increase the chances of selection if both entities do not have a legitimate business need). It follows that if related entities register for the same foreign national, but each has a legitimate job offer, then they have not necessarily worked together to *unfairly* increase that foreign national's chances of selection. Thus, if presented with evidence of a legitimate business need, USCIS should have considered that evidence. At oral argument, DHS conceded that the existence of a legitimate business need was a relevant consideration.

The NOIR sent to Potnuru's employer stated: "It appears that the petitioner has worked with another registrant, petitioner, agent or other individual or entity during the registration process to unfairly increase their chances of selection for the beneficiary." (Doc. 37-1 at 31.) USCIS relied on the relatedness of Potnuru's employer and another entity that registered on his behalf to support its conclusion. (*Id.*) USCIS requested that the employer "provide a detailed explanation and supporting documentation that . . . demonstrated you did not work with another . . . and that the registration is based on a legitimate job offer." (*Id.* at 32.) The employer's response argued that the "registrations submitted reflect the bona fide job opportunities existing in both companies" and provided accompanying evidence such as the companies' organizational chart and corresponding open job opportunities. (*Id.* at 35.) Then USCIS issued a revocation which stated:

> The evidence you submitted is insufficient to overcome the grounds for revocation. You submitted documentation to establish that bona fide job opportunities exist at both companies; however, you did not submit any evidence to refute that the two registrants worked together to unfairly increase the chances of selection for 69 of the same beneficiaries. Thus the grounds for revocation have not been overcome.

(Doc. 37-2 at 42.) USCIS acknowledged that Potnuru's employer submitted evidence of a legitimate business need but either did not consider that evidence or failed to explain how that evidence affected the finding that the employer worked to unfairly increase Potnuru's chances of selection. Accordingly, the Court remands the H-1B petition to USCIS for reconsideration consistent with this order.

The NOIR sent to Chandrakar's employer stated that USCIS had determined that

"the petitioner has colluded with other companies during the registration process to unfairly increase chances of selection" and that the employer had not established the "registration was based on a legitimate job offer." (Doc. 37-4 at 71–72.) USCIS relied on the relatedness of Chandrakar's employer and other entities that registered on his behalf to support its conclusion. (*Id.*) The employer's response argued "each company had a valid and distinct job offer, as each had different positions to provide different services to different clients, which were available at each separate company" and provided accompanying evidence such as job offer letters, contracts, as well as tax, business, and lease documents. (Doc. 37-5 at 7–8.) Yet USCIS's revocation contains no discussion of whether a legitimate business need existed for each related entity. Accordingly, the Court remands the H-1B petition to USCIS for reconsideration consistent with this order.

The NOIR sent to Vanamala's employer stated that USCIS "determined that you colluded with other companies during the registration process to unfairly increase chances of selection of the beneficiary." (Doc. 37-15 at 47.) Because the employer and another related entity registered for Vanamala, USCIS determined that the employer had "not provided enough evidence to demonstrate that you have a valid offer of employment." (*Id.* at 48.) USCIS requested an explanation and documentation establishing that Vanamala's employer did not work to unfairly increase the chances of selection and "that the registration is based on a legitimate job offer." (*Id.* at 49.) The response argued that "[t]here was a legitimate offer of employment and need from both companies" and provided accompanying evidence such as contracts, bidding documents, subcontract agreements, and end client documents. (Doc. 37-16 at 5.) Then USCIS issued a revocation which stated:

> The petitioner's response is that both companies . . . had bona fide jobs that the beneficiary could fill, establishing a legitimate Employer-Employee relationship. Therefore, none of the companies registered for the beneficiary solely to gain an unfair advantage. However, the standard for revocation in this matter was whether the companies worked in concert to gain an unfair advantage, not whether the jobs were bona fide and distinct. The fact that both of the companies were owned by the same person makes it highly unlikely that each company did not know the other were registering for the same beneficiary.

(Doc. 37-15 at 36.) USCIS acknowledged that Vanamala's employer submitted evidence of a legitimate business need but erroneously disregarded that evidence as irrelevant to the finding that it worked to unfairly increase Vanamala's chances of selection. Accordingly, the Court remands the H-1B petition to USCIS for reconsideration consistent with this order.

In their motion, Plaintiffs rely on facts specific to Potnuru because they argue "the decisions and NOIRs are identical in the material legal analysis." (Doc. 39 at 10.) But there are key factual distinctions specific to Kommidi, Lakshminarayan, Padarti, and Srinivasan that render the "legitimate business need" argument inapplicable to these Plaintiffs. After receiving the NOIRs, the employers of Kommidi, Lakshminarayan, and Padarti did not substantively respond to USCIS but instead requested to withdraw the respective petitions, which USCIS accepted. (Docs. 37-15 at 17, 37-22 at 44, 37-23 at 31, 51.) The petitioner-employer has the burden of establishing eligibility by a preponderance of the evidence. *See Matter of Soo Hoo*, 11 I. & N. Dec. 151, 152 (B.I.A. 1965). USCIS did not fail to consider whether these employers and any related entities had a legitimate business need to register for these Plaintiffs because their employers did not respond and provide such evidence. The employer of Srinivasan did respond to the NOIR, but the response singularly argued that the employer and the other entity that registered on behalf of Srinivasan were not related. (Doc. 37-19 at 60–63.) It did not address or provide evidence that both entities had a legitimate business need to register for Srinivasan. Thus, the Court finds no error in USCIS's revocations with respect to Kommidi, Lakshminarayan, Padarti, and Srinivasan.

**IV.    Conclusion**

DHS is entitled to summary judgment for the claims by Venkata, Golakoti, Kommidi, Lakshminarayan, Padarti, and Srinivasan. Potnuru, Chandrakar, and Vanamala are entitled to summary judgment, and the Court remands their H-1B petitions to USCIS for reconsideration consistent with this order. Accordingly,

**IT IS ORDERED** that Plaintiffs' motion for summary judgment (Doc. 39) is **GRANTED in part and DENIED in part** and DHS's cross-motion for summary

judgment (Doc. 43) is **GRANTED in part and DENIED in part** as explained herein. The Clerk of the Court is directed to enter judgment accordingly and terminate the case.

Dated this 5th day of January, 2026.

Douglas L. Rayes
Senior United States District Judge